# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYREE EATMON, | : | |
|     Petitioner | : | No. 1:14-cr-00070-6 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|     Respondent | : | |

## MEMORANDUM

Before the Court is Petitioner Tyree Eatmon ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1769) and his subsequent motion to compel (Doc. No. 1816). For the following reasons, the Court will deny the motions.

## I.  BACKGROUND

In 2014, a federal grand jury returned a superseding indictment charging Petitioner and twenty codefendants (collectively, "Codefendants," and with Petitioner, "Defendants") with three counts: racketeering conspiracy ("RICO") (Count I), drug-trafficking conspiracy (Count II), and drug trafficking (Count III).[1] (Doc. No. 78.) The charges stemmed from Defendants' association with a violent street gang—the Southside gang, which is affiliated with the Bloods, a national street gang—to perpetrate drug trafficking and other violent acts. (Id.) The conspiracy took place over a twelve-year period and involved deadly gang violence. (Id.) Nine defendants entered pleas of guilty—eight to one count of RICO, and one to both RICO and drug-related charges. (Doc. Nos. 1380, 1493, 1542, 1550–51, 1560, 1575, 1585.) Twelve, including Petitioner, proceeded to a joint jury trial. (Doc. Nos. 974–1027.) The jury found all twelve guilty, in late 2015, of one or more charges. (Doc. Nos. 911–34.)

---

[1] Four (4) Codefendants were also charged with firearm-related offenses. (Doc. No. 78.)

As to Petitioner, the jury found him guilty of RICO (Count I) and the two drug counts (Counts II–III), which involved 5 kilograms or more of cocaine and 280 grams and more of crack cocaine, heroin, and marijuana. (Doc. No. 919.) The presentence investigation report ("PSR") assigned a base offense level of 43 for the RICO conviction based on underlying racketeering activity for which Petitioner was deemed responsible pursuant to U.S.S.G. § 2E1.1(a)(1)–(2) (providing for a base offense level of 19 "unless the offense level applicable to the underlying racketeering activity is greater"). (PSR ¶¶ 212, 215.) The PSR indicated that the RICO conviction carried a statutory maximum of life imprisonment pursuant to 18 U.S.C. § 1963(a) (providing for a 20-year maximum "or [] life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment"). (Id. ¶ 305.) The guideline range was also calculated to be life imprisonment based on a total offense level of 43 and a criminal history category of VI. (Id. ¶¶ 272, 287, 305.)

Regarding the underlying racketeering activity that resulted in the higher statutory maximum and guideline range, the PSR stated as follows:

> The instant RICO offense encompasses eight separate underlying racketeering categories, and 109 racketeering acts (RA) as referenced in The Offense Conduct section of this report. A defendant need not have been charged with the "underlying racketeering activity," and need not have been personally involved in the activity as long as the conduct was reasonably foreseeable to him in furtherance of the RICO enterprise. Southside members were known to use threats and violence, and had access to firearms to protect their territory. Since this activity was known to all of those involved, all of underlying activity (Racketeering Acts) was reasonably foreseeable to the participants beginning at the point they entered the RICO conspiracy.

(Id. ¶ 213.)

The PSR enumerated the relevant racketeering activities, e.g., first-degree murder, attempted first-degree murder, robbery, kidnapping, and narcotics possession/distribution. (Id. ¶¶ 214.) On December 20, 2018, the Court sentenced Petitioner to concurrent terms of 260

months' imprisonment on each count of which he was found guilty and a three (3) term of supervised release. (Doc. No. 1504 at 3–4.) The Court adopted the PSR without change. (Doc. No. 1505.)

Petitioner and nine Codefendants who proceeded to trial appealed their convictions and sentences to the United States Court of Appeals for the Third Circuit. See United States v. Williams, 974 F.3d 320, 338 (3d Cir. 2020). The Third Circuit grouped their claims on appeal into five categories: (1) Sixth Amendment challenges to this Court's closure of the courtroom to the public during voir dire; (2) challenges to the Court's in camera disposition of a challenge asserted under Batson v. Kentucky, 476 U.S. 79 (1986); (3) evidentiary challenges relating to motions to suppress evidence recovered from their residences under search warrants; (4) challenges to the sufficiency of evidence at trial; and (5) challenges to their sentences based on alleged procedural defects. See id. at 335–36. While affirming all ten Defendants' judgments of conviction, and based on the Government's concession, the Third Circuit partially vacated the judgments of sentence of eight Defendants "as to the assessment of police overtime costs," vacated the judgment of sentence of one of those eight Defendants—Hernandez—in full to permit him an opportunity to make a statement or present mitigation evidence in connection with his sentencing proceedings, and vacated another of the same group of Defendants—Scheug—as to the assessment of restitution, fines, and costs. See id. at 375, 377, 380; see also (Doc. Nos. 1637, 1637-1, 1638, 1638-1, 1639, 1639-1, 1640, 1640-1, 1641, 1641-1, 1642, 1642-1, 1643, 1643-1, 1644, 1644-1, 1645, 1645-1, 1646, 1646-1).

In October 2021, this Court issued orders effectuating the vacatur of five Defendants' judgments of sentence as to the assessment of police overtime costs and entered corresponding amended judgments. (Doc. Nos. 1684–85 (Cruz), 1687–88 (Kelly), 1690–91 (Villega), 1693–94

(Atkinson), 1696–97 (Sistrunk).)  In December 2021, following sentencing hearings, the Court resentenced Defendants Hernandez and Schueg and issued amended orders regarding their judgments of sentence.  (Doc. Nos. 1705 & 1709 (Schueg), 1711 & 1712 (Hernandez).)  An amended judgment was not entered as to Petitioner, whose judgment of sentence was ordered vacated as to the police overtime costs, because his original judgment did not include such costs.  See (Doc. No. 1504).

On April 19, 2022, Petitioner filed a motion for the appointment of counsel to assist in preparing a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, which he anticipated filing in the near future.  (Doc. No. 1727.)  Petitioner represented that he had difficulty obtaining his case file from his former attorney and that he was concerned about being able to prepare his motion in time to meet § 2255's one-year statute of limitations.  (Id.); see 28 U.S.C. § 2255(f).  On April 20, 2022, the Court issued an Order denying Petitioner's motion and noting that Petitioner had failed to allege financial eligibility for the appointment of counsel, as required under 18 U.S.C. § 3006A(a)(2)(B).  (Doc. No. 1728.)  On June 28, 2022, Petitioner filed another motion, reasserting his request for counsel on the same grounds as his previous motion and alleging that his financial circumstances have not changed since this Court last found him indigent.  (Doc. No. 1735.)  On July 26, 2022, the Court issued an Order denying Petitioner's motion because the Court could not "scrutinize the merits of Petitioner's claim prior to the filing of his § 2255 petition," see (Doc. No. 1744 at 2), and that his difficulty in obtaining his full case file "is insufficient to warrant the appointment of counsel where a petitioner has not made the threshold showing that his petition has 'arguable merit in fact and law,'" see id. at 3 (quoting Montgomery v. Pinchak, 294 F.3d 492, 498–99 (3d Cir. 2002) (citing Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993))).  The Court denied the motion without prejudice to Petitioner's

4

...
...
...

right to file a renewed motion following the submission of his § 2255 motion and directed the Clerk of Court to mail Petitioner form number AO 243 (Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody).  (Id. at 3.)

On October 14, 2022, the Court received and docketed Petitioner's § 2255 motion and a supporting brief.  (Doc. Nos. 1769–70.)  Petitioner's motion does not assert the bases upon which he believes he is entitled to relief under § 2255 and instead states, as he did in connection with his prior motions for appointment of counsel, that he has been unable to review his case files and requires assistance from a court-appointed attorney for that purpose.  (Id.)  He does, however, assert, in his brief in support, that his Trial Counsel, Attorney Wendy Grella (hereafter "Attorney Grella"), "knowingly labored under an actual conflict of interest, but, she waited under AFTER trial before she filed her motion to withdraw as counsel, and the Court then appointed substitute counsel."  See (Doc. No. 1770 at 3) (capitalization in original).  He does not elaborate on that argument, purportedly because he does not have access to his files from Attorney Andrew J. Shubin ("Attorney Shubin") who represented him after Attorney Grella withdrew from representation, preventing him from "investigat[ing] the circumstances surrounding trial counsel's late motion to withdraw, and specifically, how it affected her ability to defend [P]etitioner during his trial."  (Id.)[2]

On October 18, 2022 the Court issued a Miller Order directing Petitioner to complete a Notice of Election form—which informed him of the relevant time limit and limits on filing

---

[2] The Court notes that Petitioner was represented by Attorney Grella during his arraignment, plea, and trial after she was appointed by the Court.  (Doc. No. 235.)  The jury rendered its verdict on November 16, 2015.  (Doc. No. 919.)  After trial but prior to sentencing, on December 8, 2017, Attorney Grella filed a motion to withdraw as counsel, citing an unspecified conflict of interest.  (Doc. No. 1356.)  The Court granted Attorney Grella's motion.  (Doc. No. 1386.)  The Court then appointed Attorney Shubin to represent Petitioner at sentencing and on appeal.  (Doc. No. 1387.)

second or successive § 2255 motions—stating whether he wishes for the Court to rule on his motion as filed, or whether he would like to withdraw the motion, or take other relevant action. (Doc. No. 1771.)  Seemingly in response, on November 7, 2022, Petitioner filed another Emergency Motion for the Appointment of Counsel.  (Doc. No. 1793.)  Petitioner stated that he did "not fully comprehend or understand [the Notice of Election form and related instructions], as [he] ha[d] not been able to research his criminal conviction, because ha[d] not yet been able to view his own case file."  (Id.)  Petitioner asserted that the Board of Prisons ("BOP") had "prevent[ed] [him] unconstitutionally, from being able to receive/obtain said case file" from Attorney Shubin, who had advised Petitioner that he could send the DVD to a friend or family member of Petitioner with Petitioner's consent.  (Doc. Nos. 1770-2, 1793.)

On November 9, 2022, the Court denied Petitioner's motion for the appointment of counsel without prejudice because Petitioner had "not made the threshold showing that his § 2255 motion ha[d] 'arguable merit in fact and law,'" and "[w]ithout insight into Petitioner's asserted grounds for relief under § 2255, if any, the Court cannot determine whether appointment of counsel is warranted."  See (Doc. No. 1794 at 3–4) (quoting Montgomery, 294 F.3d at 498–99 (citing Tabron, 6 F.3d at 155–57).  As to Petitioner's claim that he did not "fully comprehend" the Notice of Election form, the Court observed that "Petitioner has otherwise ably presented his arguments, and there is no indication that he cannot do so going forward."  (Id. at 4.)

On December 20, 2022, Petitioner filed a Notice of Election indicating that he had not labeled his motion as a § 2255 motion, but chose to have it re-characterized as a § 2255 motion. (Doc. No. 1815.)  Subsequently, he filed an "Emergency Motion to Compel," asking this Court to compel Petitioner's former counsel at sentencing and on appeal, Attorney Shubin, and the BOP to give Petitioner his case file because Petitioner "very much wants to immediately [a]mend

his '2255' to include any and all legal issues that Petitioner can discover and deem appropriate to submit in his 2255 motion." See (Doc. No. 1816 at 2) (emphasis in original).  The Government filed briefs in opposition to Petitioner's § 2255 motion (Doc. No. 1819) and motion to compel (Doc. No. 1823).  Petitioner filed a reply brief regarding his motion to compel.  (Doc. No. 1831.)

Petitioner then filed a motion dated July 29, 2025 and docketed on August 5, 2025 (Doc. No. 1915) to withdraw his § 2255 motion.  On August 11, 2025, the Court, noting "the AEDPA limitations on second or successive § 2255 motions," denied without prejudice Petitioner's motion to withdraw his § 2255 motion, allowing Petitioner time to reconsider and permitting him to re-file a motion to withdraw his § 2255 motion within thirty (30) days.  (Doc. No. 1917 at 5.)  On August 18, 2025, a duplicate copy of the motion to withdraw Petitioner's § 2255 motion was docketed (Doc. No. 1932), but that motion was also dated July 29, 2025, and was otherwise identical to the previously-denied motion (Doc. No. 1915).  However, noting that Petitioner's address listed in both copies of the motion was different from his address listed on the docket, the Court issued an Order on October 7, 2025 (Doc. No. 1948) denying as moot the August 18, 2025 duplicate motion, but ordering the Clerk of Court to mail the October 7, 2025 Order and the August 11, 2025 Order (Doc. No. 1917) to the address listed in Petitioner's motions and granting him an additional thirty (30) days to file another motion to withdraw his § 2255 motion.  The Court noted that "if Petitioner fails to file such a motion in the time provided, the Court will rule on the merits of his § 2255 motion."  (Doc. No. 1948 at 2.)  Petitioner has not filed a new motion to withdraw his § 2255 motion.  Having been fully briefed, Petitioner's motions are now ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). However, § 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing. See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)). Rather, § 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice." See Addonizio, 442 U.S. at 185.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to file a § 2255 motion. See 28 U.S.C. § 2244. The one-year limitations period begins to run from the latest of the following dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented by making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

See id. § 2255(f). When an appeal has been filed, the Third Circuit held that:

a "judgment of conviction becomes final" within the meaning of § 2255 on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the

date on which the defendant's time for filing a timely petition for certiorari review expires.

See Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999).

## III. DISCUSSION

### A. Timeliness of Petitioner's Motion

As noted supra, the Court imposed judgment on December 20, 2018. (Doc. No. 1504.) On January 3, 2019, Petitioner timely appealed his conviction to the Third Circuit. See (Doc. No. 1506); see also Fed. R. App. P. 4(b)(1)(A)(i) (stating that a defendant must file a notice of appeal within fourteen (14) days). On September 10, 2020, the Third Circuit affirmed his sentence (Doc. No. 1626) and issued its mandate on December 2, 2020 (Doc. No. 1645). Petitioner and Codefendants filed a petition for writ of certiorari to the United States Supreme Court and the petition was denied on October 4, 2021. See Cruz v. United States, 142 S.Ct. 309 (Oct. 4, 2021). Therefore, Petitioner's judgment of conviction became final on October 4, 2021. See Kapral, 166 F.3d at 577 (stating that a judgment of conviction becomes final on the date in which "the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari"). Petitioner therefore had one year from October 4, 2021, or until October 4, 2022, to file a timely § 2255 motion. See 28 U.S.C. § 2255(f)(1). The Court received and docketed Petitioner's § 2255 motion on October 14, 2022, which the Government contends is untimely. See (Doc. No. 1819 at 3). Under the "prisoner mailbox rule," a motion by a pro se prisoner is considered filed at the moment of delivery to prison authorities or the prison mail system for mailing. See Houston v. Lack, 487 U.S. 266, 270 (1988) (noting that "the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay"). Upon review of Petitioner's motion, the Court notes that Petitioner's motion is dated

9

September 30, 2022, and thus Petitioner's motion appears to be timely. (Doc. No. 1769 at 12.) Accordingly, the Court will address the merits of Petitioner's motion.

### B. Merits of Petitioner's Motion

In his § 2255 motion and supporting brief, Petitioner makes two claims. First, Petitioner claims that Trial Counsel Attorney Grella "labored under an actual conflict of interest." (Doc. No. 1770 at 3.) Petitioner states that he "very much wants to investigate the circumstances surrounding trial counsel's late motion to withdraw and specifically, how it affected her ability to defend [P]etitioner during his trial." (Id.) Second, he claims that his constitutional right to due process was violated when Attorney Shubin and BOP "denied [him] access to his case file/legal material," and that he "diligently attempted, for almost a year, to obtain his case file of his criminal conviction, which is the basis of this motion to vacate, from appellate attorney Mr. Andrew Shubin, to no avail." (Doc. No. 1770 at 1.) On this basis, he states, without support or without identification, that there are grounds not previously presented because "they a[re] post-conviction issues that would benefit from a developing of the record" (Doc. No. 1769 at 9), and requests that he be allowed to amend this motion after receipt of the case file (id. at 4). This claim is repeated in Petitioner's emergency motion to compel. (Doc. No. 1816.)[3]

#### 1. Petitioner's Claim Against Attorney Grella

Although the majority of Petitioner's § 2255 motion concerns Petitioner's attempts and requests to obtain his case materials, he also includes argument concerning Attorney Grella's conduct. See (Doc. No. 1770 at 3). He states that:

> Noteworthy[] is the fact that my trial counsel knowingly labored under an actual conflict of interest, but, she waited until AFTER trial before she filed her motion to

---

[3] Because the two motions repeat the same arguments, the Court will discuss them together. See (Doc. Nos. 1769, 1816).

> withdraw as counsel, and the Court then appointed substitute counsel. Petitioner very much wants to investigate the circumstances surrounding trial counsel's late motion to withdraw and specifically, how it affected her ability to defend [P]etitioner during his trial.

(Id.) In response, the Government maintains that Petitioner has not alleged sufficient facts to support his claim (Doc. No. 1819 at 6) and that Attorney Grella's withdrawal should be viewed with deference (id. at 8–9).

As discussed supra at note 2, Attorney Grella represented Petitioner before and during trial. On December 8, 2017, after Petitioner was convicted, but before he was sentenced, she filed a motion to withdraw, stating that she had "been advised of a conflict of interest which requires her to withdraw from representing [Petitioner]." (Doc. No. 1356 at 1.) Later that month, on December 29, 2017, the Court granted her motion and appointed Attorney Shubin to represent Petitioner in connection with sentencing. (Doc. Nos. 1386–87.)

The Court assumes that Petitioner seeks § 2255 relief based on an ineffective assistance of counsel claim because he asserts that Attorney Grella's conflict of interest affected her representation of him at trial. A collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984). See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001). The first Strickland prong requires Petitioner to "establish first that counsel's performance was deficient." See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). Petitioner must show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. See id. To do so, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. See id. (citing Strickland, 466 U.S. at 688). There is "a 'strong presumption' that counsel's performance was reasonable." See id.

11

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors." See id. Prejudice in this context means "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See id. (quoting Strickland, 466 U.S. at 694). Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." See id. (quoting Strickland, 466 U.S. at 694).

Notably, Petitioner must make an adequate showing with respect to both prongs of the Strickland test in order to be entitled to relief. See Strickland, 466 U.S. at 686. A failure to make the required showing on either prong precludes a finding in Petitioner's favor. See id. at 700. "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts should address the prejudice prong first when it is dispositive of a petitioner's claims. See United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

Having considered Petitioner's claim, the briefing of the parties, and the record of these criminal proceedings, the Court concludes that Petitioner has failed to establish Strickland prejudice and his claim is unavailing for that reason alone. Accordingly, the Court need not address the first Strickland prong. See Gaines v. Superintendent Benner Twp. SCI, 33 F.4th 705, 712 (3d Cir. 2022) (noting that if a § 2255 movant "makes an inadequate showing as to one of the[] [Strickland prongs], then [courts] do not need to examine the other").

To allege an actual conflict of interest, a petitioner must

> "prove (1) multiple representation that (2) created an actual conflict of interest that (3) adversely affected the lawyer's performance." Sullivan v. Cuyler, 723 F.2d 1077, 1084 (3d Cir. 1983). The "critical inquiry is whether counsel actively represented conflicting interests." Gov't of V.I. v. Zepp, 748 F.2d 125, 135 (3d Cir. 1984) (internal quotation marks omitted). There must be a point where "the defendants' interests diverge with respect to a material factual or legal issue or to a

12

course of action." Sullivan, 723 F.2d at 1086 See Simon v. Gov't of V.I., 929 F.3d 118, 129–30 (3d Cir. 2019).  Similar to the Court's conclusions in denying Petitioner's motions for appointment of counsel, the Court again finds that Petitioner points to no evidence that Attorney Grella's conflict of interest prejudiced Petitioner.  At the time of the filing of Attorney Grella's motion to withdraw (Doc. No. 1356) , the Court held a telephone conference with counsel.  During that telephone conference, Attorney Grella represented that the conflict arose within the preceding forty-five (45) days and that the Government, who was aware of the nature of the conflict, concurred in the motion to withdraw.  (Doc. No. 1362.)  Accordingly, the Court concluded that Attorney Grella's conflict did not affect trial proceedings, and thus granted the motion to withdraw.  (Doc. No. 1386.)

Even assuming arguendo that Petitioner has identified a basis upon which Attorney Grella's performance was deficient, he still fails to demonstrate that he was prejudiced by her withdrawal.  The Court appointed Attorney Shubin as replacement counsel (Doc. No. 1387) and Attorney Shubin provided representation to Petitioner during sentencing and on appeal. Petitioner's claim concerning the impact of Attorney Grella's conflict of interest (that she represented under penalty of perjury arose after trial and in line with her professional obligations) is merely speculative.  See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (explaining that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court").  The Court will deny Petitioner's claim concerning Attorney Grella.

### 2. Petitioner's Claim Against Attorney Shubin and Motion to Compel

As evidenced by the Court's discussion of Petitioner's previous motions supra, Petitioner focuses his argument on his failure to obtain his case materials.  Petitioner does not reference any

13

legal authority justifying a such a remedy and does not "address how this [C]ourt has authority to compel [defense counsel], a private attorney, to produce client files to him pursuant to an ethical rule."  See United States v. Galletta, No. 14-cv-00603, 2023 WL 4565477, at *134 n.141 (E.D. Pa. July 17, 2023).  In Galletta, the district court stated that:

> while this court recognizes [former attorney]'s ethical obligation under Rule 1.16(d) [of the Pennsylvania Rules of Professional Conduct] to turn over papers to which [the petitioner] is entitled, [former counsel] is not a party to these proceedings, and there are cases in which courts have concluded that they lack the authority to compel an attorney to turn over a client's file.

See id.  Therefore, the Court will deny this claim of Petitioner's § 2255 motion and deny Petitioner's motion to compel.[4]

### C.   Evidentiary Hearing

Section 2255(b) advises that a petitioner may be entitled to a hearing on his motion.  The decision to hold a hearing is wholly within the discretion of the district court.  See Gov't of V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  If "the files and records of the case conclusively show

---

[4] Insofar as Petitioner's motion to compel can be construed as a motion to amend his § 2255 motion, this too is denied.  "A petitioner who has filed a timely § 2255 motion may not amend it to raise new claims after expiration of the one-year limitation period."  United States v. Waller, No. 18-cv-00042, 2018 WL 3459769, at *4 (W.D. Pa. July 18, 2018) (citing United States v. Duffus, 174 F.3d 333, 336–37 (3d Cir. 1999)).  In its opposition to Petitioner's motion to compel, the Government references United States v. Thomas, 713 F.3d 165 (3d Cir. 2013), which holds that a petitioner may be eligible to equitable tolling of the limitation period if he can establish that he "has been diligently pursuing his rights" and that "some extraordinary circumstance stood in his way and prevented timely filing" of a complete § 2255 motion.  See Thomas, 713 F.3d at 174 (citing Holland v. Florida, 560 U.S. 631, 649 (2010)).  Assuming arguendo that equitable tolling is the proper analytical framework to apply here, the Court agrees with the Government's contention that Petitioner's efforts "cannot be classified as diligent, for he has had years to resolve the issue of gaining access to the casefile."  (Doc. No. 1819 at 10.)  Further, he does not "explain the necessity of the materials he claims he was deprived of," see (id.), and simply requests these materials to investigate potential claims.  Petitioner has not filed any additional material that would supplement or amend his § 2255 motion.  For the foregoing reasons, and insofar as Petitioner's motion to compel can be construed as a motion to amend, the Court will deny the request.

that the prisoner is entitled to no relief," the Court need not hold a hearing. See 28 U.S.C. § 2255(b). In determining whether a hearing must be held regarding claims of ineffective assistance of counsel, the Court must first "accept as true the nonfrivolous allegations in the petition" and then "determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel." See United States v. Dawson, 857 F.2d 923, 927–28 (3d Cir. 1988); see also United States v. Arrington, 13 F.4th 331, 334 (3d Cir. 2021) (applying the standard as set forth in Dawson). Assuming the truth of Petitioner's nonfrivolous allegations but not of the conclusory and speculative ones, the Court finds that he has conclusively failed to establish ineffective assistance of counsel as Attorney Grella. As to Petitioner's claim against Attorney Shubin, Petitioner has not identified a basis for relief pursuant to a § 2255 motion. Accordingly, the Court finds no reason to hold an evidentiary hearing in this matter.

        **D.**     **Certificate of Appealability**

In proceedings brought under § 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Here, the Court concludes that jurists of reason would not find the disposition of this case debatable, and the Court will not issue a COA.

## IV.     CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's § 2255 motion (Doc. No. 1769) without an evidentiary hearing and will not issue a COA.  The Court will also deny Petitioner's motion to compel.  An appropriate Order follows.

 s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
